# Lyon v. Robertson.

*Action on Promissory Note, by Payee against Maker.*

*Confederate treasury notes, as consideration of note.* — Where a bill of exchange, drawn by defendant, in Richmond, Virginia, in 1863, was indorsed for his accommodation by plaintiff, and was discounted by a bank in Richmond; and the bill not being paid by defendant at maturity, plaintiff procured a bank in Mobile, Alabama, where he had Confederate money on deposit, to forward to the Richmond

[Lyon v. Robertson.]

bank the necessary funds to pay it; and the payment was made in Confederate treasury notes; *held*, that a promissory note, afterwards given by defendant to reimburse plaintiff for the amount thus paid, was supported by a valid consideration, and was not illegal, nor contrary to any principle of public policy.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Francis S. Lyon, against Richard M. Robertson and John H. Prince; was founded on a promissory note for $2,065.30, made by one R. J. Fletcher, together with said Robertson and Prince, dated May 20, 1863, and payable on or before the 14th day of May, 1864, with interest from the 14th May, 1863, to said F. S. Lyon or order; and was commenced on the 24th day of August, 1866. Fletcher was not sued, and the action was dismissed as to Prince, on a suggestion of his bankruptcy. On the trial, as the bill of exceptions states, after the plaintiff had read in evidence the note sued on, the plaintiff himself was introduced as a witness by the defendant, and testified as follows: " Some time prior to the date of said note, Fletcher, the principal in it, called upon witness in the city of Richmond, and stated that he desired to raise some money; and witness, at his request, indorsed his bill for $2,000 on S. S. Webb & Co. at Mobile, which Fletcher said he wished to get discounted at the Farmers' Bank in Richmond. The bill was not paid at maturity, and witness was called on to pay it to the bank where Fletcher had negotiated it. Having an account with the Bank of Mobile, and residing at a distance from the bank, witness requested the president of the bank to remit for him to Richmond the amount of the bill, and take it up; which was accordingly done, and the bill sent to witness. Witness had no funds in the Bank of Mobile at that time but Confederate currency; and the bank, no doubt, paid the bill out of his funds. Witness afterwards met Fletcher, who, to reimburse the amount so paid for him, gave witness the note sued on. Witness had no knowledge of what kind of funds Fletcher received on the bill discounted for him by the bank in Richmond."

On the evidence above set out, the court charged the jury as follows : " If you find, from the evidence, that the notes issued by the late Confederate States to circulate as currency were the consideration given for the paper sued on in this action, and that there was no other consideration, then your verdict will be for the defendant — the plaintiff cannot recover. In your inquiry as to the kind of currency, you may look to the date, the kind of currency in circulation, and the fact that plaintiff had no other kind of funds or currency at the Bank of Mobile when that bank forwarded the sum instructed to be forwarded to Richmond. The word ' dollars,' men-

[Lyon v. Robertson.]

tioned in the paper sued on, means dollars in United States lawful money, and it devolves upon the defendant to show by proof that the word means something else."

The plaintiff excepted to this charge, and requested the court, in writing, to charge the jury as follows : " That to authorize the jury to find for the defendant, they must be satisfied from the proof that Fletcher received Confederate currency on the bill indorsed and paid by plaintiff, and for which payment the note sued on was given ; and in the absence of proof showing such facts, it would be immaterial in what currency the indorser paid the bill taken up by him." The court refused to give this charge, and the plaintiff excepted to its refusal.

The charge given by the court, and the refusal of the charge asked, are now assigned as error.

Lyon & Jones, for appellant.

Morgan, Bragg & Thorington, contra.

PETERS, C. J. — The evidence set forth in the bill of exceptions does not tend to show that the original transaction — the making and negotiation of the bill of exchange indorsed by Lyon for the accommodation of Fletcher — was in any way illegal, or forbidden by any principle of public policy, state or federal. It was upon this instrument that Fletcher became liable to refund to Lyon the amount that he might be compelled or legally required to pay on it. The testimony shows that Lyon was the accommodation indorser for Fletcher. As such, upon a payment of the bill by him, he was entitled to sue Fletcher for the amount thus paid ; for, as to Fletcher, Lyon occupied the situation of a surety towards his principal. This is the relation of the maker of a bill of exchange and an accommodation indorser. Meek & Co. v. Black, 4 Stew. & P. 374 ; Rev. Code, § 3070. Then, on payment of the bill to the Richmond Bank by Lyon, he acquired a right to be reimbursed the sum thus paid. The testimony tends to show that this liability on the part of Fletcher to Lyon was the basis of the consideration of the note on which this action was founded.

Since the decision of the case of Thorington v. Smith, by the supreme court of the United States (8 Wallace, 1), the payment of a debt in Confederate treasury notes, or an agreement to pay a debt in such currency, cannot be regarded as an act forbidden by law or public policy. In delivering the opinion of the court in that case, Chief Justice Chase says : " Contracts stipulating for payment in this currency (Confederate) cannot be regarded, for that reason only, as made in aid of the foreign invasion in the one case, or of the domestic insurrection

[Molton v. Escott.]

in the other. They have no necessary relations to the hostile government, whether invading or insurgent. They are transactions in the ordinary course of civil society, and, though they may indirectly and remotely promote the ends of the unlawful government, are without blame, except when proved to have been entered into with actual intent to further invasion or insurrection." 8 Wallace, 12. The payment, then, of the bill of exchange negotiated by Fletcher, to the bank at Richmond, in Confederate currency, was not unlawful. The benefit to Fletcher derived from this payment was the consideration of the note sued on here. This was not an illegal consideration. The charge of the court was calculated to mislead the jury, to the plaintiff's injury, and was, for this reason, erroneous. Cases cited in Brickell's Digest, vol. 1, p. 344, §§ 126 et seq.

The charge asked by the plaintiff should have been given. It has been shown that an agreement to pay a debt in Confederate currency, or a payment of a debt in that currency, is not illegal. Then, the contract would only be illegal, when based on a loan of Confederate treasury notes. *Lawson* v. *Miller*, 44 Ala. 616; *Hale* v. *Huston*, *Sims & Co.* 44 Ala. 134; *Whitfield* v. *Fulford*, at January term, 1873. This was the effect of the charge asked, and it should have been given. Its refusal was erroneous.

The judgment of the court below is reversed, and the cause is remanded for a new trial.